**EXHIBIT C**

  RESOLVED: That any Member of the Company or any of the other persons named below (each Member of the Company and each other such person being referred to herein as an "Authorized Representative" of this Company), by the signature of any one or more of them, be and each of them individually is hereby duly authorized and empowered to negotiate, make, execute and deliver in the name of this Company any factoring agreement, security agreement or other agreement with **BRANCH BANKING AND TRUST COMPANY** ("BB&T") with respect to factoring, financial or other credit accommodations to this Company or others, which agreement or agreements (and any and all amendments thereto and renewals and extensions thereof) may contain any terms and provisions whatsoever which any of the Authorized Representatives may deem appropriate, including, but not limited to, provisions for this Company to (i) sell and assign to BB&T, or otherwise factor with BB&T, any or all of this Company's accounts, contract rights, general intangibles, chattel paper, instruments, and other rights to the payment of money, on such terms as may be mutually agreed to from time to time between BB&T and any of Authorized Representatives of this Company, (ii) borrow monies from BB&T on a secured basis in such amounts as may be mutually agreed to from time to time between BB&T and any of Authorized Representatives of this Company, (iii) grant to BB&T a lien upon all or any portion of the real and personal assets held, owned or controlled by this Company as security for any indebtedness at any time owing to BB&T, (iv) waive its right to trial by jury and other rights it may have as deemed appropriate by any of Authorized Representatives and (v) execute in favor of BB&T guaranties or other undertakings on behalf of this Company; and it was further

  RESOLVED: That each Member of the Company and each of the following other persons shall be an Authorized Representative for purposes of these resolutions:



  RESOLVED: That any one of Authorized Representatives, or any person or persons hereafter and from time to time designated by any of them to act for this Company, hereby is duly authorized and empowered to deal in any way whatsoever with BB&T pursuant to any agreements or undertakings entered into with BB&T, including, without limitation, to pledge, mortgage, grant a security interest in, assign, endorse, negotiate, deliver or otherwise hypothecate or transfer to BB&T any and all assets now or hereafter held, owned or controlled by this Company, and for that purpose to execute and deliver to BB&T any and all factoring agreements, loan agreements, security agreements, promissory notes, mortgages, deeds of trust, security deeds, assignments, subordinations, schedules, designations, transfers, endorsements, contracts, instruments of pledge, guaranties, agreements, financial statements, or other instruments or communications whatsoever; to make remittances and payments by checks, drafts or otherwise; to withdraw funds or other property; and to do and perform all other acts and things deemed by such officer or agent to be necessary, convenient or proper to carry out any such agreements or undertakings; and it was further

BB&T LLC Certificate of Members (NC Version) (WEHW #285216)

RESOLVED: That any one of Authorized Representatives, or any person or persons hereafter from time to time designated by any of them to act for this Company, is hereby authorized and empowered to endorse the name of this Company to any and all checks, drafts and other instruments or orders for the payment of money, payable to this Company or its order for the purpose of depositing same in any account or accounts of BB&T with any bank, banker, or trust company or any of the branches of any said bank, and to deal with any and all such checks, drafts, and other instruments or orders for the payment of money and the proceeds thereof as the property of BB&T; and it was further

RESOLVED: That any bank, banker or trust company be, and it hereby is, authorized and requested to receive for deposit to the credit of BB&T, without further inquiry, all such checks, drafts and other orders or instruments for the payment of money, payable to this Company or its order, and that said bank shall be under no liability to this Company for the disposition which BB&T may or shall make of the said instruments or the proceeds thereof; and it was further

RESOLVED: That any such Member or other Authorized Representative has done or may do in pursuance of any of said agreements or to facilitate transactions thereunder is hereby ratified and approved; and it was further

RESOLVED: That the powers and authorization hereby conferred by the Company's Members be binding upon the Company until such time when notice of any changes, modifications or rescissions thereof have been duly communicated to BB&T and accepted by BB&T in writing; and it was further

RESOLVED: That any Member of this Company be and hereby is duly authorized and empowered to attest any of the foregoing instruments or agreements on behalf of this Company and to certify to the passage of the foregoing resolutions.

## ASSIGNMENT OF FACTORING PROCEEDS
## AND INTERCREDITOR AGREEMENT

THIS AGREEMENT (this "Agreement") is made as of the 24th day of January, 2006, by and among **Private Label Sourcing, LLC**, a Limited Liability Company formed under the laws of the State of Delaware ("Client"), **Jetwell Garments Limited**, a company incorporated in Hong Kong ("Borrower"), **Branch Banking and Trust Company** ("BB&T") and **DBS Bank (Hong Kong) Limited** ("Lender").

### Recitals:

Client has entered into a Factoring and Security Agreement with BB&T executed by Client on January 24, 2006 (the "Factoring Agreement"), and accepted by BB&T on January 24, 2006. Pursuant to the Factoring Agreement, BB&T has agreed to purchase from Client, and assume certain credit risk in respect of, accounts receivable arising from the sale of goods and services by Client.

Borrower (parent of Client) and Lender have entered into one or more agreements under which Lender has agreed to provide certain financing and extensions of credit to Borrower, with the consent of Client. At the request of Lender, Client has agreed to assign to Lender, as security for all of Borrower's indebtedness and obligations to Lender, all amounts due and to become due to Client under the Factoring Agreement and to establish a procedure for the repayment of such obligations. BB&T and Lender desire to establish the relative priorities of their respective security interests in Client's accounts and other assets on the terms set forth below.

NOW, THEREFORE, in consideration of the mutual covenants herein contained and other valuable consideration, the receipt of which is hereby ackn

owledged, the parties hereto hereby agree as follows:

1. **Factoring Agreement.** Client and BB&T represent to Lender that attached hereto as <u>Exhibit A</u> is a true and correct copy of the Factoring Agreement, as in effect on the date hereof.

2. **Security Assignment.** As security for any and all existing and future loans or other financial accommodations made or to be made to Borrower by Lender, Client hereby assigns, transfers and sets over unto Lender and hereby grants a security interest to Lender in and to all of Client's right, title and interest in and to all monies and claims for monies due or to become due to Client under the Factoring Agreement.

3. **Collection of Accounts; Notification of Account Debtors.** All Account invoices shall be mailed or otherwise transmitted by Client with a copy to BB&T or, at BB&T's option, shall be sent to BB&T ready to be mailed or otherwise transmitted to the customers, in which event the postage will be paid by Client. Each invoice shall state in a manner satisfactory to BB&T that the receivable is payable only to BB&T. Client will keep all shipping and delivery receipts and copies of all invoices at its offices available for BB&T's inspection, and will promptly deliver to BB&T

consents to any and all liens on and security interests now existing or hereafter created or arising in favor of Lender in any or all of Client's existing or future receivables, accounts, contract rights, general intangibles, inventory or other tangible or intangible property (real or personal), and BB&T agrees that neither the existence nor creation of any such lien or security interest shall constitute or result in a breach or violation of, or a default or event of default under, the Factoring Agreement.

7. **Monthly Statements**. BB&T agrees to send to Lender a monthly statement of Client's accounts with BB&T covering transactions under the Factoring Agreement after the close of each month concurrently with the sending of such statement to Client. In the event Client disputes any monthly statement, Client shall provide to Lender a copy of any notice given by Client to BB&T with respect to the dispute.

8. **Priority of Security Interests**. In connection with the Factoring Agreement, Client has granted to BB&T a continuing lien on and security interest in, all of the following property of Client, whether now owned or existing or hereafter created or acquired, together with all cash and non-cash proceeds thereof: all Accounts (as defined below) purchased by or assigned to BB&T, regardless of how such Accounts shall arise or be acquired; all goods at any time sold by Client that are the subject of a "Warranted Account", including without limitation all returned, rejected or repossessed goods, and certain other rights and interests of Client as more particularly described in Paragraph 9 of the Factoring Agreement (the "Collateral"). "Accounts" means any and all of Client's accounts, general intangibles, chattel paper, contracts, instruments, documents, acceptances, notes, bills and all other forms of obligations at any time owing to Client, including all cash and non-cash proceeds thereof, whether now owed or hereafter created or acquired by Client.

Client has granted or will grant Lender a security interest in or lien upon the Collateral, or a part thereof, and in order to clarify and establish the relative priority of the security interests of BB&T and Lender, if any, in the Collateral, BB&T and Lender agree, notwithstanding any contrary provision contained in the Factoring Agreement, that:

(a) The security interests of BB&T in the Collateral are and shall be prior and superior to the security interests of Lender in the Collateral or any part thereof; and

(b) The security interests of Lender in all of Client's assets except the Collateral shall be prior and superior to the security interests of BB&T in such assets; and

(c) Except as herein specifically provided, the rights and priority between Lender and BB&T shall be determined under applicable law; and

(d) The provisions of this Paragraph with respect to the priorities of the security interest and rights concerning collateral of Lender and BB&T are solely for the benefit of such parties and their respective successors and assigns and no other persons shall have any right, benefit or priority under or because of such provisions.

The subordinations and priorities specified hereinabove are expressly conditioned upon the

valid and shall apply notwithstanding any nonavoidability and perfection of the security interest to which another security interest is subordinated and, if the security interest to which another security interest is subordinated is not perfected or is avoidable, for any reason, then the subordinations and relative priority agreements provided for herein shall still be effective as to the particular collateral which is the subject of the unperfected or avoidable security interest.

9. **Controlling Provisions**. To the extent that any provision of this Agreement is inconsistent with any provision of the Factoring Agreement, each such provision in the Factoring Agreement shall be deemed to be amended by, and as provided in, this Agreement. Except as specifically modified by this Agreement, the Factoring Agreement shall remain in full force and effect.

10. **Notices**. Except as otherwise provided herein, any notices or consents required or permitted by this Agreement shall be in writing and shall be deemed delivered if delivered in person or if sent by certified mail, postage prepaid, return receipt requested, addressed to the party to be notified as follows:

(a)  If to Client:
Private Label Sourcing, LLC
597 Broadway
New York, NY 10012
Attn: Christine Dente

(b)  If to Borrower:
Jetwell Garments Limited
Unit C, 10/F., Garment Centre,
576-586 Castle Peak Road, Hong Kong
Attn: Jocky Cheung

(b)  If to Lender:
DBS BANK (HONG KONG) LIMITED
16/F, The Centre, 99 Queen's Road Central
Hong Kong
Attn: Amanda Chiu, Enterprise Banking - Factoring

(c)  If to BB&T:
Branch Banking and Trust Company
317 West High Street
11th Floor, Market Square Tower
High Point, North Carolina 27261
Attn: International Department

or such other address as any party may designate for itself by like notice.

11. **Termination**. This Agreement is to continue in effect until written notice of termination is delivered by any one of the parties hereto to the others; provided, however, that such

# EXHIBIT "A"

[Attach copy of the Factoring Agreement]

# AGREEMENT I

It is agreed between

1.  a) Jetwell Garments Limited
       Unit C, 10th Floor, Garment Centre
       No. 576-586 Castle Peak Road
       Cheung Sha Wan, Kowloon

    b) Well Success Textile (HK) Co Ltd
       Unit F & G 11/F
       Garment Centre
       576-586 Castle Peak Road
       Cheung Sha Wan, Kowloon

    - hereinafter called "seller" -

2.  Private Label Sourcing, LLC
    597 Broadway, New York, NY 10012-3211

    - hereinafter called "buyer" -

3.  Banking and Trust Company
    Market Street Tower, 317 West High Street, High Point, North Carolina 27260

    - hereinafter called "BB&T" -

that the seller will deliver goods to the buyer. It is known that the buyer is in a factoring relationship with BB&T and all rights in the receivables for such goods have been/will be assigned to BB&T.

The seller herewith confirms that he will have no further claims on the goods or the receivables once they are assigned to BB&T.

This agreement is governed by US law. Place of jurisdiction is the State of North Carolina. BB&T, however, is entitled to claim at the location of the seller or the buyer.

Jetwell Garments Limited                              Private Label Sourcing, LLC

By: ..................................                By: *Christie A. Dente*
Date: ................................                Date: 1/17/06

Well Success Textile (HK) Co Ltd

By: ..................................
Date: ................................

Banking and Trust Company

By: ..................................
Date: ................................

星展銀行 ☒ DBS

Date: 13 December 2005

Our ref: P/KIRP/20241/05

Jetwell Garments Limited
Unit C, 10th Floor, Garment Centre
No. 576-586 Castle Peak Road
Cheung Sha Wan, Kowloon

Dear Sirs,

## BANKING FACILITIES

DBS Bank (Hong Kong) Limited (the "Bank", which expression shall include its successors and assigns) is pleased to advise that it is prepared to consider making available or continuing to make available the banking facilities detailed below (the "Facilities") to the Borrower described below, subject to the provisions of this facility letter, the attached "Terms and Conditions Governing Banking Facilities and Services" and the "Terms and Conditions Governing Back-to-Back Factoring Facilities and Services".

**A. BORROWER:**

Jetwell Garments Limited

**B. FACILITY LIMITS:**

| Type(s) of Facility | Facility Limit(s) |
|---|---|
| 1. Factoring | USD2,000,000.- |

**C. PRICING AND CONDITIONS:**

Unless otherwise provided herein, interest and commission(s) on the Facilities will be charged at the Bank's standard rate that may be varied from time to time at the Bank's discretion.

| Factoring | Terms and conditions are stipulated in "Terms and Conditions Governing Back-to-Back Factoring Facilities and Services" attached to this letter and in the Factoring Agreement. In case of inconsistency between the Factoring Agreement and this letter, the latter shall prevail. |
|---|---|

| Handling Fee of Facilities: | HKD20,000.-. |
|---|---|

**D. SECURITY AND CONDITIONS PRECEDENT:**

The Facilities will be made available or continue to be made available to the Borrower provided that the Bank has received each of the following, in a form and substance satisfactory to the Bank:

1. This letter duly executed by the Borrower.

2. General Commercial Agreement duly executed by the Borrower.

DBS Bank (Hong Kong) Limited 星展銀行(香港)有限公司
Enterprise Banking 企業銀行業務
16th Floor, The Center 香港中環
99 Queen's Road Central 皇后大道中99號
Central, Hong Kong 中環中心16樓

Tel 電話: 852.2218 8598
Fax 傳真: 852.2285 3628
www.dbs.com



星展银行 ⊠ DBS

**Jetwell Garments Limited**                                                Our Ref: P/KIRP/20241/05

3. Guarantee and Indemnity for an unlimited amount duly executed by Cheung Kin On Jocky.

4. Guarantee and Indemnity for an unlimited amount duly executed by Well Success Textile (H.K.) Company Limited.

5. Guarantee and Indemnity for an unlimited amount duly executed by Kei Fung (Yarn) Company Limited.

6. Factoring Agreement duly executed by the Borrower.

7. Original or Certified copies of all necessary consents, approvals and other authorizations (including but not limited to those required by relevant governing authorities and/or the resolutions of the directors and shareholders of the Borrower and/or any security provider(s)) in connection with the execution, delivery, performance and enforcement of this letter and all other documents mentioned above, if applicable.

8. Original or Certified copies of all necessary registrations and filings as may be required by relevant governing authorities in connection with the execution, delivery, performance and enforcement of this letter and all other documents mentioned above, if applicable.

9. Such other documents, items or evidence that the Bank may request from time to time.

### E. COVENANTS AND UNDERTAKINGS:

The Borrower undertakes to the Bank that it will:

- ensure that all consents, licences, approvals, registrations and filings (as appropriate) in connection with the Facilities, guarantee or securities as may be provided in relation to the Facilities granted hereunder are duly obtained, completed and will remain in full effect throughout the period when there is outstanding under the Facilities.

- promptly submit to the Bank:
  a) a certified copy of the audited (and, as appropriate, consolidated) financial statements of the Borrower and all corporate security provider(s), if applicable, as soon as they are available, but in any event within 10 months after the end of the financial year end and at any other time requested by the Bank;
  b) with reasonable promptness, details of any litigation, arbitration or administrative proceeding current or, to its knowledge, threatened or commenced against it; and
  c) other information that the Bank may request from time to time.

- immediately inform the Bank of:
  a) any change of the Borrower's directors or beneficial shareholders (except where the Borrower is a listed company) or amendment to its memorandum or articles of association or equivalent constitutional documents.
  b) any substantial change to the general nature of the Borrower's existing business.
  c) any factor which may inhibit, impair or delay performance by the Borrower or the security provider(s), if any, of the obligations under any loan and security documents to which they are a party.
  d) the failure to continue to obtain consents, licences, approvals, registrations and filings (as appropriate) in connection with the granting of the Facilities and/or the provision of securities (including without limitation guarantee(s)) in relation to the Facilities granted hereunder throughout the period when there is outstanding under the Facilities.

2

星展銀行 ☒ DBS

Jetwell Garments Limited

Our Ref: P/KIRP/20241/05

We hereby confirm our understanding and acceptance of all the terms and conditions set out in (i) this letter, (ii) the "Terms and Conditions Governing Banking Facilities and Services" and (iii) the "Terms and Conditions Governing Back-to-Back Factoring Facilities and Services" attached to this letter and our agreement to be bound by all of them.

Signed for and on behalf of
Jetwell Garments Limited

*For and on behalf of*
*JETWELL GARMENTS LIMITED*
*駿威製衣有限公司*

.................................
*Authorized Signature(s)*
Authorized signor(s)

4

星展银行 ☒ DBS

Jetwell Garments Limited                                       Our Ref: P/KIRP/20241/05

## F. OTHER TERMS AND CONDITIONS

The Facilities are available at the sole discretion of the Bank and are in all respects uncommitted. The Bank may at any time immediately modify, terminate, cancel or suspend the Facilities or any part of it, or otherwise vary the Facilities or any part of it, without the consent of the Borrower or any other person.

Notwithstanding any provisions stated in this letter, the Facilities are repayable on demand by the Bank. The Bank has the overriding right at any time to require immediate payment of all principal, interest, fees and other amounts outstanding under this letter or any part thereof and/or to require cash collateralisation of all or any sums actually or contingently owing to it under the Facilities.

The "Terms and Conditions Governing Banking Facilities and Services" and the "Terms and Conditions Governing Back-to-Back Factoring Facilities and Services" attached and/or referred to in this letter form an integral part of this letter and the Borrower agrees to observe and be bound by them.

This letter and the Facilities shall be governed by the laws of the Hong Kong Special Administrative Region and the parties hereto hereby submit to the non-exclusive jurisdiction of the Hong Kong Courts.

Please signify your understanding and acceptance of this offer by signing and returning to us the duplicate copy of this letter and provide each of the items under the section headed "Security And Conditions Precedent" above, for the attention of Ms Peony Wong ("Designated Relationship Manager"), within one month from the date of this letter, otherwise the offer will lapse at the discretion of the Bank.

We enclose a set of documents which should also be completed and returned to us. If you have any queries, please contact the Designated Relationship Manager at telephone number 3122-7718.

We are pleased to be of service to you.

Yours faithfully,
For and on behalf of
**DBS Bank (Hong Kong) Limited**

_____
Authorized Signatories
Documentation Services
Enterprise Banking

SY/fl
Encl.

3

星展银行 ☒ DBS

**Jetwell Garments Limited**  Our Ref: P/KIRP/20241/05

**Survey Report on Receivables:** A survey of the Eligible Distributor's receivables shall be conducted by the Bank or the Credit Underwriter prior to the activation of the Factoring Facilities and these terms and conditions and those stipulated in the Facility Letter issued by the Bank to the Borrower from time to time, may be revised based on the survey findings. The Bank may also carry out subsequent periodic surveys. All costs of the surveys are to be borne by the Borrower. The Bank reserves the right to withdraw the Factoring Facilities if any of the survey findings are unsatisfactory to the Bank.

Other Terms & Conditions of the Factoring Facilities

- The purchase of debts for this Factoring Facilities under Clause 2(6) of the Factoring Agreement between the Borrower and the Bank shall include assignment of debts due from the Eligible Distributors to the Borrower. The Borrower also agrees that the Eligible Distributor shall promptly deliver the assignment of debts to the Credit Underwriter with a copy to the Bank.

- For Eligible Distributors: Recourse Collection Only Factoring Agreement is to be signed by the Eligible Distributors with the Credit Underwriter together with the related agreement or assignment of the factoring proceeds in favour of the Bank plus any other documentations required by the Bank or the Credit Underwriter from time to time.

- UCC filing of the Eligible Distributor's factored receivables in favour of the Credit Underwriter shall be arranged.

- Consignment and returnable sales with debtors are not eligible for advance payment.

6

星展银行 ☒ DBS

Jetwell Garments Limited                                          Our Ref: P/KIRP/20241/05

## Terms and Conditions Governing Back-to Back Factoring Facilities and Services

The following terms and conditions shall apply for the Factoring Facilities:-

| Nature of the Factoring Facilities | Disclosed<br>Non-recourse |
|---|---|
| Prepayment Limit | USD2,000,000.- |
| Prepayment Percentage | 85% (calculated based on the approved receivables of the Eligible Distributors purchased by the Credit Underwriter) |
| Maximum Financing Period | Up to 90 days from date of invoice billed by the Eligible Distributors to the debtors approved by the Credit underwriter. |
| Legal Fee | USD1,000.- |
| Service Charge | 0.2% on gross value of the Eligible Distributors' invoiced amount. (excluding service charge of the Credit Underwriter) |
| Discounting Charge | Charged at (i) Standard Bills Rate quoted by the Bank from time to time for advance in foreign currency and (ii) 1% per annum below the Standard Bills Rate quoted by the Bank from time to time for advance in Hong Kong Dollars. |
| Interest on demand for amount due and unpaid | 2% per month. |

**Prepayment:** Prepayment under the Factoring Facilities is available to the Borrower on debts qualifying for withdrawals before the payment dates at the entire discretion of the Bank.

**Collection and Receivables Management:** The Bank's receivable management services include management of the Borrower's sales ledger, the issue of monthly statements to its debtors and collection of the receivables from its debtors.

**Eligible Distributors:** Private Label Sourcing LLC

**Credit Risk Cover Applied:** With debtor's credit risk cover upto 100% of the credit limit or debts outstanding (created after goods are acknowledged by the Eligible Distributors' end buyers), whichever is lower, for the approved debtors.

**Debtor Subject to Approval:** The Eligible Distributor's debtor(s) and each of its individual limit is granted subject to satisfactory evaluation of the debtor by the Bank and the approval of credit risk cover by the Credit Underwriter. The Bank reserves the right from time to time to review and vary the limit or not to make any prepayment at all at its absolute discretion.

**Notice to Debtor:** All approved debtors shall be notified of factoring arrangement and to pay direct to the Credit Underwriter.

**Prepayment Instruction:** All prepayments made to the Borrower under the Factoring Facilities shall be effected upon its prepayment instruction by fax to its account with the Bank. The Bank shall not be held responsible for any delay, loss or damage in complying with the fax instruction or through delay, illegibility or non-receipt of the fax instruction.

5

星展銀行 ☒ DBS

## Terms and Conditions Governing Banking Facilities and Services

These Terms and Conditions form an integral part of the banking facility letter ("Banking Facility Letter") from DBS Bank (Hong Kong) Limited to the Borrower to which they are attached.

1. **Definitions and Interpretation**

   1.1 The terms below used in these Terms and Conditions shall have the corresponding meanings:

   **"Agreement"** the Banking Facility Letter together with these Terms and Conditions (including any supplement) and any other terms and conditions and/or agreement referred to in the Banking Facility Letter.

   **"assets"** includes present and future properties, revenues and rights of every description.

   **"Bank"** DBS Bank (Hong Kong) Limited which includes all its branches and offices wherever situated and its successors, assigns and any other person with which the Bank merges or consolidates.

   **"Banking Facility Letter"** the banking facility letter(s) (including all its attachments, schedules, appendices, amendments and supplements) issued by the Bank in relation to Facilities extended by the Bank to the Borrower, to which these Terms and Conditions are attached.

   **"Bank's Cost of Funds"** the cost of funding of the Bank as may be determined by the Bank from time to time.

   **"Borrower"** the Borrower specified in the Banking Facility Letter, and where there is more than one Borrower, all references to the "Borrower" shall mean all such persons or any one or more of them.

   **"Business Day"** a day on which commercial banks in Hong Kong and, if applicable, the principal financial center of the relevant currency, are open for business (other than a Saturday).

   **"Exchange Rate"** the rate for converting one currency into another currency that the Bank determines to be prevailing in the relevant foreign exchange market at the relevant time, such determination to be conclusive and binding on the Borrower.

   **"Facilities"** the banking facilities (or any part of it) specified in the Banking Facility Letter and such other facilities, loans, overdrafts, advances, etc. from time to time made available by the Bank.

   **"Fixed Deposit Rate"** the deposit interest rate for fixed deposits pledged to the Bank as security for its corresponding Banking Facility.

   **"HIBOR"** the Hong Kong Interbank Offered Rate quoted by the Bank for the relevant period.

   **"LIBOR"** the London Interbank Offered Rate quoted by the Bank for the relevant period.

   **"Prime Rate"** the rate which the Bank announces or applies from time to time as its prime rates for lending Hong Kong Dollars, or where applicable, for lending United States Dollars.

   **"Services"** any banking services provided by the Bank.

   1.2 Unless a contrary indication appears, a reference in the Agreement to:-
   a) a person includes an individual, a company, sole proprietorship, partnership or body unincorporated and its successors and assigns;
   b) any document includes a reference to that document as amended, varied, supplemented, replaced or restated from time to time; and
   c) a provision of law is a reference to that provisions as amended or re-enacted

   1.3 Unless the context otherwise requires, words importing the singular include the plural and vice versa and the neuter gender includes the other genders.

   1.4 Any matter required to be done on a particular date which is not a Business Day shall be done on the next following Business Day.

   1.5 Headings are for convenience only and are to be ignored in construing these Terms and Conditions.

2. **Application**

   2.1 These Terms and Conditions shall apply to any Facilities and Services which the Bank, in its sole discretion, may agree to make available and provide to such extent and in such manner as the Bank thinks fit.

   2.2 These Terms and Conditions shall be subject to such other terms and conditions which may be specified by the Bank from time to time in the Banking Facility Letter, other documents, agreements or applications.

   2.3 In the event of any conflict or inconsistency between these Terms and Conditions and the provisions of the Banking Facility Letter, the latter shall prevail.

3. **Payments**

   3.1 Unless otherwise agreed in writing by the Bank, all payments made under the Agreement shall be made in immediately available funds to the Bank before noon on the due date.

   3.2 All payments by the Borrower to the Bank shall be made without any set-off, counterclaim, deduction, withholding or condition of any kind. If the Borrower is compelled by law to make any withholding or deduction, the sum payable by the Borrower shall be increased so that the amount actually received by the Bank is the amount it would have received if there had been no such withholding or deduction.

   3.3 Payment by the Borrower to the Bank shall be in the currency of the relevant liability or, if the Bank so agrees in writing, in a different currency, in which case the conversion to that different currency shall be made at the Exchange Rate. The Borrower shall be liable for any shortfall if the converted currency is less than the outstanding liability.

   3.4 Any monies paid to the Bank in respect of the Borrower's obligations may be applied in or towards satisfaction of the same or placed to the credit of a suspense account with a view to preserving the Bank's rights to prove for the whole of the Borrower's outstanding obligations.

   3.5 If any payments paid to the Bank in respect of the Borrower's obligations are required to be repaid by virtue of any law relating to insolvency, bankruptcy or liquidation or for any other reason, the Bank shall be entitled to recover such sums from the Borrower as if such monies had not been paid.

4. **Drawings Against Uncleared Amounts**

   In the event the Bank permits the Borrower to draw against funds to be collected or transferred from any account(s), the Borrower shall on demand reimburse the Bank in full the amount so drawn if the Bank does not receive the funds in full at the time the Bank ought to have received the same or if, after the Bank has accepted the transfer, the Bank is prevented from collecting or freely dealing with the funds in accordance with its usual banking practice.

5. **Letter of Credit**

   For Facility relating to Letters of credit calling for cargo receipt, if so agreed to be granted by the Bank, the beneficiaries and each of their individual limits are subject to the Bank's approval on a case-by-case basis. The Bank may from time to time carry out at the Borrower's expense updated searches of the said beneficiaries and all related costs and fees may be debited to the Borrower's account.

6. **Account Payable Financing**

   Payment under the Facility shall be made directly to the relevant supplier. The suppliers and each of their individual facility limits are subject to the Bank's approval on a case-by-case basis. The Bank may from time to time carry out at the Borrower's expense updated searches of the said suppliers and all related costs and fees may be debited to the Borrower's account.

7. **Negotiation under Documentary Credit**

   If a discrepancy is found in the underlying letter of credit documents, then notwithstanding anything contained in the Agreement, the Bank may at its absolute discretion refuse to negotiate any such documentary credit and/or bill(s).

8. **Documents against Acceptance Bills Purchased and Documents against Payment Bills Purchased with Insurance Cover**

   8.1 The Bank has or may from time to time take out and do all things as appropriate or necessary to effect and maintain an insurance policy with such reputable insurance company or companies on such terms and in such value to cover such risk(s) related to the Facility as the Bank may deem fit, and the Borrower agrees to reimburse the Bank, without deduction, for all monies expended including but not limited to insurance premium in relation thereon.

   8.2 The Borrower is required to comply with all the terms and conditions of such policies as shall from time to time be entered into between the Bank and any insurance company as the Bank may deem fit, and the Borrower undertakes and warrants not to do or omit to do or permit or cause or suffer to be done any act, matter or thing whatsoever whereby any such policy of insurance may be rendered void or voidable or whereby any premium may be increased.

   8.3 Such arrangement shall not extinguish the Borrower's obligations under the Facility, and the Borrower agrees to render such co-operation and assistance as the Bank may require in connection with any claim or other matter arising in connection with any such insurance policy.

9. **Treasury Facilities**

   9.1 For any foreign exchange, options, futures, swaps or other structured or derivative products, applications will only be considered by the Bank subject to its receipt of the documentation that the Bank may require from time to time. Any treasury related contract will be entered into by the Borrower at the rate(s) quoted by the Bank at its absolute discretion.

   9.2 The terms included or referred to in the relevant confirmation issued by the Bank shall apply to all treasury related transactions between the Borrower and the Bank.

   9.3 The Borrower warrants that it will enter into any transaction with the Bank solely in reliance upon its own judgement and at its own risk, and the Bank shall not be responsible for any loss or other consequences suffered or incurred by the Borrower, whether or not acting on advice received from the Bank.

   9.4 The treasury related contract amounts shall be subject to the relevant facility limit(s) (if any) stipulated in the Banking Facility Letter and the risk exposure limit(s) set (either advised or otherwise) by the Bank from time to time.

   9.5 The Bank may from time to time mark the Borrower's outstanding treasury related contracts to market by reference to the prevailing market rate or quotation in order to calculate the Borrower's gain or loss under the contracts. If the Bank determines that the Borrower has incurred a loss under any such contracts by the then prevailing mark-to-market calculation, the Borrower shall forthwith pay such sum or deliver such collateral as required by the Bank to cover such loss.

   9.6 The Bank has the right to close out and/or terminate any or all outstanding treasury related contracts of the Borrower if:
   a) the Borrower fails to perform any terms of the Agreement including its default in payment;
   b) the outstanding contracts amounts exceed the facility limit(s) (if any) or the Bank's risk exposure limit(s);
   c) the Borrower should become insolvent or suspends payment of any debt when due or subject to any bankruptcy or winding-up petition; or
   d) any circumstances have arisen or continued which, in the Bank's opinion, might adversely affect the Bank's position under the relevant contracts.

   Upon closing-out or termination of the treasury related contracts, the Borrower shall pay to the Bank any loss incurred under those contracts. Such loss shall be determined by the Bank (acting in good faith) based on the replacement market value of the contracts so closed-out or terminated, which determination shall be binding and conclusive on the Borrower.

10. **Application of Proceeds**

    10.1 The Bank may apply the net proceeds of any sale, disposition or dealing of the security of the Borrower towards discharge of the Borrower's obligations to the Bank in whatever priority that the Bank may determine.

    10.2 The Borrower shall, upon demand by the Bank:
    a) provide such further security in form and value as may be required in the opinion of the Bank sufficient to secure any of the Borrower's obligations to the Bank; and
    b) execute and deliver to the Bank any documents in form and substance satisfactory to the Bank over any of the Borrower's assets as the Bank specifies in any such demand.

    10.3 Save for gross negligence or wilful default, the Bank shall not be liable for any loss or damages or depreciation in value of any security granted in favour of the Bank due to the Bank's exercise of any of its rights over any security.

11. **Interest**

    11.1 The Bank shall charge interest on any sum(s) outstanding or owing by the Borrower from time to time. Unless otherwise specified, interest will accrue on a daily basis and shall be calculated, compounded and payable on such basis and in such manner as the Bank may determine at its absolute discretion.

    11.2 Save as otherwise specified, interest will be calculated by reference to the actual number of days elapsed and a 365-day year if the Facility is in HK Dollars, Pounds Sterling, Singapore Dollars or Malaysia Ringgit or a 360-day year if the Facility is in any other approved foreign currencies.

    11.3 If the interest rate in respect of any Facility is expressed to be a margin over the Prime Rate, the Bank shall be entitled, in its reasonable discretion, at any time to substitute the Bank's Cost of Funds in place of the Prime Rate in calculating the interest payable under such Facility. If the interest rate in respect of any Facility is expressed to be a percentage less than the Prime Rate, the Bank shall be entitled, in its reasonable discretion, at any time to replace such interest rate by the Bank's Cost of Funds as the applicable interest rate in respect of such Facility.

    11.4 If any amount under the Banking Facility Letter is unpaid on due date or exceeds the permitted facility limit, such overdue or excess sum will be subject to the Bank's then prevailing overdue or over limit interest rate, and may be compounded monthly or at such other intervals as the Bank may determine. The Bank may, without prejudice to its other rights, increase the interest rate on the entire amount outstanding under the Banking Facility Letter if any amount becomes overdue.

SNT/S/CF/125 (04/05)

DBS Bank (Hong Kong) Limited

# How It Works – Back-to-Back Factoring



**Hong Kong** | **Overseas Factor**

- DBS ↔ Jetwell Garments Limited
- (4) Advances
- (7) Balance
- (6) Payment under Assignment of Factoring Proceeds
- (3) Invoices Purchased Report
- (2) Assign S2 Invoices to buyer under Domestic Factoring Agreement
- Private Label Sourcing LLC → US Factor
- Target → US Factor
- (5) Payment
- (1) Sell Goods (Hong Kong)
- (1) Sell Goods US
Disclaimer: The information contained in this document is intended only for use during the presentation and should not be disseminated or distributed to parties outside the presentation. DBS Bank accepts no liability whatsoever with respect to the use of this document or its contents.


星展銀行 DBS