UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ATATEKS FOREIGN TRADE LTD, JORDAN           |
and ATATEKS DIS TICARET A.S.,                             |
                                                                                  |   Index No. 07 Civ. 6665 (HB)
      Plaintiffs,                      |
                                                                                  |
   -against-                                              |
                                                                                  |
PRIVATE LABEL SOURCING, LLC                         |
and SECOND SKIN, LLC,                                         |
                                                                                  |
      Defendants.                    |
-------------------------------------------------------------------X

<u>**REPLY MEMORANDUM OF LAW IN SUPPORT OF**</u>
<u>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**</u>

NESENOFF & MILTENBERG, LLP
Attorneys for Defendant Second Skin, LLC
of Counsel: Philip A. Byler, Esq./Andrew T. Miltenberg, Esq.
363 Seventh Avenue - Fifth Floor
New York, New York 10001
212.736.4500

-i-

## TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| PLAINTIFF'S MISTREATMENT OF THE FACTS | 2 |
| ARGUMENT | 4 |
| I. PLAINTIFF'S OPPOSITION RUNS AFOUL OF BASIC SUMMARY JUDGMENT RULES | 4 |
| II. PRIVATE LABEL AND SECOND SKIN ARE NOT ALTER EGOS | 5 |
|     A. No Domination | 6 |
|     B. No Wrong Committed | 8 |
|     C. Equity Does Not Support The Application of Alter Ego Theory | 8 |
|     D. No Genuine Issue of Material Fact | 8 |
| III. PLAINTIFF'S DISCUSSION OF CLAIMS SHOWS DEFENDANT SECOND SKIN SHOULD BE DISMISSED FROM THE ACTION | 9 |
| CONCLUSION | 10 |

-ii-

# TABLE OF AUTHORITIES

Page

**Cases**

*Bellsouth Telecommunications, Inc. v. W.R. Grace & Co.*,
77 F.3d 603, 615 (2d Cir. 1996) ............................................................................. 3, 4, 5

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ......................................................... 3

*Crown Heights Jewish Community Council, Inc. v. Fischer*,
63 F.Supp.2d 231, 241 (E.D.N.Y. 1999) .................................................................... 4, 5

*D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir.),
*cert. denied*, 524 U.S. 911 (1998) ................................................................................. 3

*Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) ............................................. 3, 4, 5

*Topps Chewing Gum, Inc. v. Imperial Toy Corporation*,
686 F.Supp. 402, 409 (E.D.N.Y. 1988) ....................................................................... 4, 5

*United States v. Bosurgi*, 530 F.2d 1105, 1111 (2d Cir. 1976) ....................................... 4, 5

*Wasserman v. City of New York*, 802 F.Supp. 849, 857 (E.D..Y. 1992) ......................... 4, 5

*Wylef v. United States*, 725 F.2d 156, 160 (2d Cir. 1983) .............................................. 4

**Statutes and Rules**

FRCP Rule 56(c) ........................................................................................................ 1, 4, 5

-1-

## **PRELIMINARY STATEMENT**

Defendants Private Label Sourcing, LLC ("Defendant PLSL") and Second Skin, LLC ("Defendant Second Skin") (collectively "Defendants") submit this Reply Memorandum of Law in further support of their motion for partial Summary Judgment, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure ("FRCP"), dismissing the First and Second Causes of Action of the Amended Complaint insofar as they are asserted against Defendant Second Skin and dismissing in their entirety the Third, Fourth, Fifth, Sixth, and Seventh Causes of Action (which are asserted solely against Defendant Second Skin).

This is a case that Defendants submit arose out of two problems at Plaintiff's end of what had been a satisfactory business relationship from 2002 to 2006. Plaintiff had problems in its Jordanian plant so serious that Target put Plaintiff on suspension, and Plaintiff starting in November 2006 did not accept Target claims and chargebacks, departing from the practice expected in the garment industry of working out responsibilities for those claims and chargebacks between factory and supplier. The consequence was that Private Label was absorbing those chargebacks and loss of sales because Target offset payments to Private Label, thus causing the cash flow problem referenced by Plaintiff and in turn the dispute with Plaintiff.

Defendants showed in its motion papers supporting summary judgment that Defendant Second Skin was not a party to any of Defendant Private Label's purchase orders to Plaintiff for garments, Defendant Second Skin did not receive any of the garments subject to Private Label's purchase orders and Defendant Second Skin did not receive payment for any of the garments made pursuant to the purchase orders. In what was suppose to be a simple goods sold and delivered case, there was and is no apparent ground for keeping Defendant Second Skin in the case.

-2-

Plaintiff has chosen, however, to attempt to retain Defendant Second Skin in the case by means of groundless accusation and personal attack on Ms. Christine Dente, spinning a tale that calls upon the farthest reaches of the Amended Complaint with respect to supposed fraudulent conveyances and numerous causes of action. But to put it bluntly, there is a basic problem with the tale: it is an irresponsibly asserted false story which relies on the say-so of the Plaintiff's attorney who also indulges himself in unjustified personal attack on Defendants's chief witness.

According to the alternative universe occupied by Plaintiff's attorney, commissions that everyone calls commissions for services well understood in the industry are mislabeled "kickbacks" -- never mind that there is no evidence in the record of anyone calling the commissions as kickbacks and no evidence that they can properly be treated as kickbacks. "Chargebacks," a well understood matter in the garment industry emanating from the ultimate customer based on such problems as late shipments and quality issues, are absurdly labeled without basis as a means to divert funds; it is another labeling game without supporting evidence. Private Label, an ongoing business to the present day, is mistreated as a defunct business, even though a former 50% owner of Private Label was able to sell his interest for $300,000 in January 2006, even though valuations performed at the time established that Private Label was worth more than what the sale of the prior 50% owner's interest reflected, and even though Private Label in January 2006 established a new factor banking relationship in January 2006.

## PLAINTIFF'S MISTREATMENT OF THE FACTS

Plaintiff's so-called "Statement of Facts" is an argumentative section that rests on mischaracterization and unsupported assertion. Plaintiff, for some examples, misstates the two

-3-

methods of doing business with Target, writes a piece of unvarnished fiction with respect to a non-existent kickback scheme and mistreats the subject of chargebacks in a way that is absurd. (*See* Christine Dente Declaration.)

Also, what evidence that is submitted by Plaintiff, a relatively short declaration by Ihlan Arslan, relies on inadmissible hearsay and is contradictory to Ihlan Arslan's own deposition. (*Compare* ¶ 3 of Ihlan Arslan's Declaration on a hearsay statement concerning payment of commissions to Defendant Second Skin an Ihlan Arslan's deposition (tr. 98) denying involvement in and knowledge of payment of commissions to Defendant Second Skin.)

Further, as the accompanying Reply Declarations of John Huber, C.P.A. and Christine Dente make abundantly clear, Plaintiff's argumentative mistreatment of the Private Label tax returns is simply off base. Private Label was not a defunct business in the years 2003 through 2006. Private Label has not gone out of business, but rather has continued in business. Bruce Allen, an original 50% owner of Private Label, was able in January 2006 to sell his share of the company for $300,000; there were two arms length valuations of Private Label done by outside companies, one by Sax Macy Fromm & co, PC and one by Rosenberg Rich Baker Berman & Company, that showed that Bruce Allen chose to make a quick sale rather than realize fuller value reflected in the valuations; and Private Label established a new factor banking relationship in January 2006 with BB & T, which required a good credit rating.

Accordingly, Plaintiff's so-called "Statement of Facts" and its Rule 56.1 Counter-Statement do not establish genuine issues of material fact.

-4-

## ARGUMENT

Plaintiff's opposition is legally flawed. Among the main reason why are the following.

### I.

### PLAINTIFF'S OPPOSITION RUNS AFOUL OF BASIC SUMMARY JUDGMENT RULES

The first main reason is that Plaintiff's opposition runs afoul of basic summary judgment rules.

Rule 56 of the Federal Rules of Civil Procedure authorizes the Court to enter judgment where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir.), cert. denied, 524 U.S. 911 (1998). While a party seeking summary judgment bears the initial burden of showing that no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), the party opposing summary judgment may not rest upon the mere allegations of the pleadings and may not rely on conclusory allegation or unsubstantiated speculation, *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998), but rather must come forward with competent evidence, based on personal knowledge, of facts showing there is a genuine issue of material fact. *Bellsouth Telecommunications, Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996). Indeed, Rule 56(e) of the Federal Rules of Civil Procedure provides in pertinent part:

> "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . . When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if

-5-

appropriate, shall be entered against the adverse party."

What Plaintiff has done erroneously is to come in with conclusory allegations and unsubstantiated speculations, <u>Scotto v. Almenas</u>, 143 F.3d 105, 114 (2d Cir. 1998), and has failed to come forward with competent evidence, based on personal knowledge, of facts showing there is a genuine issue of material fact, <u>Bellsouth Telecommunications, Inc. v. W.R. Grace & Co.</u>, 77 F.3d 603, 615 (2d Cir. 1996), in contravention of Rule 56(e).

While Plaintiff's attorney has not gone so far as to file an improper attorney's affidavit, <u>see</u> <u>Wylef v. United States</u>, 725 F.2d 156, 160 (2d Cir. 1983)(attorney affirmation not based on personal knowledge of the relevant facts is to be accorded no weight on a motion for summary judgment), <u>United States v. Bosurgi</u>, 530 F.2d 1105, 1111 (2d Cir. 1976)(attorney affidavit not based on personal knowledge is impermissible substitute for competent evidence), <u>Crown Heights Jewish Community Council, Inc. v. Fischer</u>, 63 F.Supp.2d 231,241 (E.D.N.Y. 1999)(attorney affidavit not based on personal knowledge insufficient to defeat summary judgment), <u>Wasserman v. City of New York</u>, 802 F.Supp. 849, 857 (E.D..Y. 1992)(attorney affidavit rejected as having no evidentiary value); <u>Topps Chewing Gum, Inc. v. Imperial Toy Corporation</u>, 686 F.Supp. 402, 409 (E.D.N.Y. 1988)(attorney affidavit rejected as evidentiary matter because attorney affidavit nothing more than opinion), Plaintiff's attorney has used the Memorandum of Law to make factual arguments that do not have factual support and rely essentially on the say-so of Plaintiff's attorney.

## II.

### **PRIVATE LABEL AND SECOND SKIN ARE NOT ALTER EGOS**

Plaintiff's main argument reflects how Plaintiff has had to resort to the farther reaches of the Amended Complaint, where Plaintiff's counsel led the Court and Defendants' counsel to believe he

-6-

was not going in order to attempt to keep Defendant Second Skin in the case. A simple goods sold and delivered case does not provide the basis for Defendant Second Skin to be in this case.

Plaintiff asserts that Defendant Second Skin and Defendant Private Label are "alter egos." The branches of that argument are misconceived.

### A.     No Domination.

Plaintiff argues that Defendant Second Skin has dominated Defendant Private Label -- never mind that Defendant Second Skin did not come into existence until 2005 and the evidence establishes that Defendant Second Skin was founded and has developed in totally separate lines of business. (Grannis Decl. Ex. G: C. Dente Dep. 23-24.) To create a false sense that an alter ego argument can be made here, Plaintiff misapplies the factors typically examined in alter ego analysis.

Plaintiff argues that there has been an absence of corporate formalities, but absent from Plaintiff's case is that the operation of Defendant Second Skin an Defendant Private Label is overlapping management due to the supposed lack of formalities. That showing cannot be made in this case because: (i) the present other 50% owner of Private Label, Jetwell Garments Ltd., is a Hong Kong corporation that handles the finances of Private Label while Ms. Dente handles the sales and (ii) the business lines of Defendant Second Skin are separate. As a result, Plaintiff falls back on claiming that the so-called kickback scheme to create a fallacious and false non-issue about directors not stopping the kickbacks.

Plaintiff argues that there is an overlap of ownership and management between Defendant Second Skin and Defendant Private Label. There is an overlap in the sense that Private Label is 50% owned by Ms. Dente and Defendant Second Skin is 100% owned by Ms. Dente, but Plaintiff cites no case law that such specific facts are supportive of a finding of alter ego. Also, the evidence does

-7-

not establish that Ms. Dente controls completely Private Label. That assertion by Plaintiff's attorney is based again on reference to the non-existent kickbacks, which is bogus.

Plaintiff argues that Private Label is inadequately capitalized. Plaintiff offers no accountant's testimony to establish that point, and the accompanying Reply Declaration of John Huber, CP.A., the relatively meager income of Defendant Second Skin, if added to Defendant Private Label, would not materially alter the financial situation of Defendant Private Label.

Plaintiff argues that there is common office space, but this overlooks Ms. Dente's testimony that the consulting business of Defendant Second Skin can be done anywhere, is not specific to any location and has separate phones. (Grannis Decl. Ex. G: C. Dente Dep. 62, 66.)

Plaintiff argues that Defendant Private Label and Defendant Second Skin do not deal with each other at arm's length. This is misconceived argument. Defendant Private Label and Defendant Second Skin do not deal with each other, as they are in separate lines of business.

Plaintiff argues that Defendant Second Skin and Defendant Private Label are not independent profit centers; but that is just made up and wrong. The evidence shows that the two companies have separate tax filings and have separate lines of business.

Plaintiff argues that Defendant Private Label is dominated by Defendant Second Skin and does not have the ability to act independently. For that proposition, there is just attorney argument, no record references.

Plaintiff finally argues that Defendant Private Label has siphoned off funds. This, as discussed in the accompanying Reply Declaration of Ms. Dente, did not happen. It is a groundless accusation, requiring the mistreatment of fairly earned commissions as kickbacks.

In sum, when the Plaintiff's application of the alter ego factors is reviewed, it is readily seen

-8-

that Plaintiff has misapplied those factors and that the record evidence simply does not support Plaintiff's argumentative assertions.

**B.    No Wrong Committed.**

Plaintiff argues that Defendant Second Skin has committed a wrong against Defendant Private Label. Plaintiff goes at length to invoke a legal point that is absurdly off point. A review of the Reply Declaration of John Huber, C.P.A. shows that the notion that Defendant Second Skin has committed a wrong against Defendant Private Label is wholly unsupportable given the meager income of Defendant Second Skin compared to the size of business of Defendant Private Label.

**C.    Equity Does Not Support The Application of Alter Ego Theory.**

Plaintiff's argument that equity supports the application of alter ego theory in this case because, basically, it would be another pocket to reach for in aid of a judgment. Plaintiff's thoughts on that subject appear to be not in line with the financial reality of Defendant Second Skin; see the tax returns of Defendant Second Skin attached to the Reply Declaration of John Huber, C.P.A..

More fundamentally, the problem is that in what was a simple goods sold and delivered case, Plaintiff has gone to great lengths to rope in a non-party to the contract documents in this case -- the Private Label purchase orders to Plaintiff. Equity is not served by holding a non-party to the contracts liable for alleged breaches of the contracts by a party absent a far greater showing than what Plaintiff has made. As discussed above and in the accompanying Reply Declaration of Christine Dente, Plaintiff has made argumentative assertions unsupported by the evidence.

**D.    No Genuine Issue of Material Fact.**

As discussed above in Point I of the Argument, Plaintiff's opposition runs afoul of basic summary judgment rules. There are no genuine issues of material fact established by Plaintiff's

-9-

opposition.

### III.

### PLAINTIFF'S DISCUSSION OF CLAIMS SHOWS DEFENDANT SECOND SKIN SHOULD BE DISMISSED FROM THE ACTION

Points II, II and IV of Plaintiff's Opposition Memorandum of Law concede that the quantum meruit and unjust enrichment claims should be dismissed, but argue that Plaintiff has validly asserted claims for breach of contract, accounts stated and fraudulent conveyance.

Plaintiff's position for keeping Defendant Second Skin in the the breach of contract and accounts stated claims is the alter ego theory and none other. Because that application of alter ego theory is legally erroneous, as discussed above herein in Point II of this Reply Memorandum of Law, it follows that Defendant Skin should be dismissed from the claims for breach of contract and accounts stated.

Plaintiff's argument for application of New York fraudulent conveyance law is that (i) there have been fraudulent transfers in the kickbacks; (ii) there has been an intent to defraud; and (iii) conveyances were made while Defendant Private Label was insolvent. These propositions are completely unsustainable.

*First*, there have been no conveyances from Defendant Private Label to Defendant Second Skin for there to be any issue of fraudulent conveyance law in the first place. Plaintiff paid commissions to Defendant Second Skin; Defendant Private Label did not transfer anything to defendant Second Skin. The commissions were not kickbacks.

*Second*, Plaintiff prattles about so-called "badges of fraud," but: the fact that Ms. Dente owns 50% of Defendant Private Label and 100% of Defendant Second Skin is not fraudulent; the fact is

-10-

that the commission payments made by Plaintiff to Defendant Second Skin did not reflect an inadequacy of consideration; and the fact is that the commission payments did not render Defendant Private Label insolvent -- *see* again the Reply Declaration of John Huber, C.P.A..

*Third*, Plaintiff's argument that the transfers were made while insolvent is rendered useless because the predicate point -- that Defendant Private Label transferred property without fair consideration -- is not satisfied.

What Plaintiff has dome with fraudulent conveyance law is to attempt to fit a big square peg into a small round hole. It does not remotely work and needs to be dismissed.

## CONCLUSION

For the reasons stated above and in Defendants' original moving papers, the Court should grant this motion for summary judgment dismissing the Amended Complaint insofar as it is asserted against Defendant Second Skin from the action and award such further and other relief as deemed just and proper.

**Dated:** New York, New York
June 16, 2008

NESENOFF & MILTENBERG, LLP
**Attorneys for Defendants**

By: ___/s/ Philip A. Byler, Esq.___
Philip A. Byler, Esq.

363 Seventh Avenue - Fifth Floor
New York, New York 10001
212.736.4500